James K. Kloss, SBN 010327
james.kloss@lewisbrisbois.com
Allison R. Edwards, SBN 028080
allison.edwards@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051
Firm email: azdocketing@lbbslaw.com
Attorneys for Defendants Lauren Glassey and Amber Norton

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sittingdown,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　Defendants. | No. CV 13-1082-PHX-SRB (BSB)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and LRCiv. 56.1, Defendants Lauren Glassey and Amber Norton (collectively, "Defendants") hereby submit this Motion for Summary Judgment. Defendants are entitled to summary judgment because there is no genuine issue of material fact that could establish that Defendants acted with deliberate indifference to Plaintiff's medical care. Contrary to his allegations, Plaintiff received treatment for his skin condition and was evaluated by medical for "passing out". Plaintiff's real allegation is that he was not treated in the way he would have preferred and his skin condition (which he testified he has had off and on since at least 2008) was not immediately cured. Plaintiff alleges, at most, that Defendants have acted negligently when providing treatment to Plaintiff. Plaintiff's claims cannot support a § 1983 claim against Defendants for medical indifference.

4814-5185-4110.1

This Motion is supported by the following Memorandum of Points and Authorities, along with the Separate Statement of Facts filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background.

#### A. *Plaintiff makes allegations related to his medical treatment while an inmate at the Central Arizona Correctional Facility.*

Plaintiff asserts a § 1983 medical indifference claim against Defendants Amber Norton ("Norton") and Lauren Glassey ("Glassey") relating to the alleged, and unsubstantiated, failure to treat his rash. *See* Defendant's Separate Statement of Facts ("SSOF") #1. Defendant Norton was employed by Correctional Healthcare Company f/k/a Physicians Network Association as the Health Services Administrator a/k/a Facility Health Administrator (collectively, "HSA") for the Central Arizona Complex in Florence, Arizona ("CACF")—where Plaintiff was incarcerated. SSOF # 2. Defendant Glassey was employed by CHC as a nurse practitioner at CACF. SSOF # 3.

Plaintiff complains about the treatment he received from Defendants in connection with a skin condition for an approximately three month period from May 10, 2012 to August 6, 2012 at the CACF. SSOF # 4.

Specifically, Plaintiff alleges that Norton denied Plaintiff treatment for his rash on May 12, 2012. SSOF # 5. Plaintiff claims Norton made no attempt to confer with the nurse practitioner or the doctor on Plaintiff's behalf, even though she described the rash as "very bad". SSOF # 6. Plaintiff claims Norton "made sure" he was not treated for his rash on May 12, 2012. SSOF # 7. He also alleges that Norton was deliberately indifferent to his serious medical needs because she ignored Plaintiff's May 21, 2012 inmate letter grievance, reporting that Plaintiff had passed out and that he had run out of medication for a rash, which she had previously described as "very bad." SSOF # 8.

Plaintiff claims he suffered for three months while Glassey treated a wrong diagnosis. SSOF # 9. Plaintiff also alleges that Glassey was deliberately indifferent to Plaintiff's serious medical needs for refusing to examine him on June 2, 2012 "for passing

out." SSOF # 10. Plaintiff claims Glassey ended his medication on August 1, 2012, without any follow-up for the rash. SSOF # 11. Plaintiff claims Glassey issued him a long sleeve shirt, but not a hat. SSOF # 12.

### B. Contrary to his allegations, Plaintiff has received treatment from medical at CACF and an off-site dermatologist for his skin condition from May 12, 2012 to the present.

Plaintiff has had what he describes as the same rash, off and on, since at least 2008. SSOF # 13. Plaintiff had a rash that he describes as a different rash from at least 1999 to 2007. SSOF # 14.

Plaintiff admits that he was seen by medical staff at the prison during the time he is complaining about the failure of Defendants to treat him. SSOF # 15. Plaintiff admits that he began receiving medication for the rash in May 2012. SSOF # 16. Plaintiff's real allegation is that the rash was not cured immediately by Defendants. SSOF # 17. However, Plaintiff has received treatment for his skin condition since he first requested to be seen by medical at CACF relating to his complaints about the rash on May 10, 2012. SSOF # 18. Plaintiff refused treatment from nurses at CACF medical, and requested that he be seen by a physician. SSOF # 19. Plaintiff has additionally been receiving treatment for his skin condition from August 6, 2014 to the present from medical and physicians at the facility and an off-site dermatologist. SSOF # 20. On October, 23, 2013, an off-site dermatologist, Dr. Racette, indicated in his assessment/plan for Plaintiff, "atopic dermatitis". SSOF # 21. Dr. Racette indicated that he discussed with patient his skin is very dry and recommended Clobetesol 0.05% topical ointment. SSOF # 22. On November 8, 2013, Plaintiff began receiving the Clobetesol 0.05% topical ointment. SSOF # 23.

Plaintiff continues to experience symptoms associated with the skin condition, off and on, which has been diagnosed as "dermatitis".[1] SSOF # 24. Plaintiff testified that his rash is better, and it comes and goes. SSOF # 25.

---

[1] According to Mayoclinic.org:

Plaintiff claims that a physician at CACF has diagnosed him with dermatitis; that Glassey failed to diagnose him with dermatitis from May 12, 2012 to August 6, 2012; and that the failure to diagnose him with dermatitis at an early stage has caused his rash to worsen. SSOF # 26. However, as early as May 16, 2012, Glassey diagnosed Plaintiff with "dermatitis", and treated him accordingly. SSOF # 27.

Plaintiff was evaluated for his rash by medical personnel at CACF, including Glassey, in May, 2012, including an evaluation on at least May 12, 2012, May 16, 2012, and May 31, 2012. SSOF # 28. Glassey ordered that Plaintiff be given a hat and long sleeved shirt on May 21, 2012. SSOF # 29. Although Glassey may order a long sleeved shirt in her role at CACF, she is not responsible to physically issue these materials to the inmates at CACF, including Plaintiff. SSOF # 30.

Plaintiff was evaluated for his rash by medical personnel at CACF, including Glassey, in June, 2012, including an evaluation on at least June 2, 2012 and June 4, 2012, SSOF # 31.

Plaintiff was evaluated for his rash by medical personnel at CACF in August, 2012, including an evaluation on at least August, 1, 2012, August 6, 2012 and August 15, 2012, SSOF # 32.

Plaintiff's complaints against Defendants are based on Plaintiff's incorrect belief that Plaintiff did not receive treatment, when in reality he is really complaining that his skin condition was not cured immediately by Defendants:

> Question to Sittingdown: So what exactly is your complaint regarding Ms. Norton? If she was the one that provided you treatment

---

Dermatitis is a general term that describes an inflammation of the skin. Although dermatitis can have many causes and occurs in many forms, this disorder usually involves an itchy rash on swollen, reddened skin.

Skin affected by dermatitis may blister, ooze, develop a crust or flake off. Examples of dermatitis include atopic dermatitis (eczema), dandruff, and rashes caused by contact with poison ivy or certain metals.

Dermatitis is a common condition that usually isn't life-threatening or contagious. Even so, it can make you feel uncomfortable and self-conscious. A combination of self-care steps and medications can help you treat dermatitis.

| | | |
|---|---|---|
| | | on May 12, 2012, what is your complaint regarding that treatment as it relates to Ms. Norton? |
| | Response by Sittingdown: | There was no treatment. I didn't get any treatment. |
| | Question to Sittingdown: | Well, you told me that you were seen for the condition and evaluated. |
| | Response by Sittingdown: | Right, but no treatment. How could I have the treatment when I have the same rash today. |
| | Question to Sittingdown: | When you say no treatment, do you mean that it wasn't cured? |
| | Response by Sittingdown: | Exactly right. |
| | Question to Sittingdown: | I'm trying to understand what you mean by that. |
| | Response by Sittingdown: | It wasn't cured. That's correct. |
| | Question to Sittingdown: | So when you're making complaints and saying that you weren't provided any treatment, is it your testimony that what you're really saying is that they didn't cure the rash? |
| | Response by Sittingdown: | They never have. |
| | Question to Sittingdown: | So just so I understand then, so you're not alleging that on May 12, 2012 that Ms. Norton failed to provide you with an evaluation? |
| | Response by Sittingdown: | She failed to give me an evaluation and she failed to treat me. |
| | Question to Sittingdown: | But I thought when you say she failed to give you an evaluation, I thought you told me she looked at the rash. |
| | Response by Sittingdown: | So did two or three other people in there. |
| | Question to Sittingdown: | But in your opinion that's not an evaluation. I need to understand exactly what you're claiming. So when you go in to the medical treatment room and Ms. Norton takes a look at your rash and you have a discussion about what's going on, in your opinion, you're not receiving treatment? |
| | Response by Sittingdown: | That's my opinion. |
| | | **** |
| | Question to Sittingdown: | When you say Ms. Norton didn't treat you, is there any other allegation other than the fact that you're saying your rash wasn't cured that goes into that? Like, when you say Ms. Norton didn't treat you, you just mean that your rash wasn't cured; is that correct? |

| | | |
|---|---|---|
| Response by Sittingdown: | | That's correct. |
| | | **** |
| Question to Sittingdown: | | So your testimony is going to be that the nurses, when they were treating your rash from May to early August of 2012, they were prescribing you cream and pills. It just maybe wasn't working? |
| Response by Sittingdown: | | Yes…. |
| Question to Sittingdown: | | But I just wanted to be clear that they were prescribing something. It just wasn't working? |
| Response by Sittingdown: | | Well, yeah. They didn't throw me outside and let me starve to death, but they gave me something that didn't work…. |

SSOF # 33.

Plaintiff admits that Ms. Norton never refused to treat him:

| | | |
|---|---|---|
| Question to Sittingdown: | | Did Ms. Norton ever tell you I'm not going to treat you for this rash? |
| Response by Sittingdown: | | She never said that. |

SSOF # 34.

Plaintiff claims that Glassey ended his medication on August 1, 2012, without any follow-up for the rash. SSOF # 11. However, Plaintiff admits that he refused to be seen by a nurse when he came in to medical to be seen for the rash on August 1, 2012:

| | | |
|---|---|---|
| Question to Sittingdown: | | So on August 1, 2012, you came in to be seen for your rash as an emergency and is it correct that you refused to be seen by a nurse and insisted that you be seen by a doctor? |
| Response by Sittingdown: | | Yeah…. |
| Question to Sittingdown: | | So just so I understand, what are you claiming about Ms. Glassey failing to – said she stopped your medication without any followup, but on the same day you're refusing to seen by a nurse. |
| Response by Sittingdown: | | Yeah. |

SSOF # 35.

### C. Defendant Amber Norton did not actively participate in the diagnosis and decision regarding Plaintiff's request for medical services.

Plaintiff claims Norton made sure he did not receive treatment for his rash on May 12, 2012. SSOF # 7. However, Plaintiff was seen in the nurse's line on May 12, 2012; and he was referred to the health care provider at CACF for further evaluation. SSOF # 36. Plaintiff's medical records do not identify Ms. Norton as the nurse who was assigned to provide treatment to Plaintiff on May 12, 2012. SSOF # 37.

Plaintiff claims that Norton failed to respond appropriately to a May 21, 2012 inmate letter grievance. SSOF # 8. Plaintiff submitted a Health Needs Request ("HNR") on May 20, 2012, stating that he was out of Triamcinolone cream and had passed out on the yard for a couple of seconds, which medical at CACF responded to on May 21, 2012. SSOF # 38. When an inmate makes a HNR, the request may be evaluated by any medical personnel working at the time. SSOF # 39. Norton is not responsible to answer all inmate HNR's. SSOF # 40. Norton may respond to an inmate's HNR if she is working at the time. SSOF # 41. Medical personnel working at the time responded appropriately to Plaintiff's HNR. SSOF # 42. Norton did not respond to Plaintiff's HNR; and cannot be held responsible for the response by other medical personnel. SSOF # 43.

### D. Plaintiff was examined by medical on June 2, 2012, which would have included an examination for "passing out" if he complained about passing out at the time.

On May 21, 2012, Glassey addressed Plaintiff's HNR in the medical chart, where Plaintiff complained about his rash and passing out. SSOF # 56. Glassey ordered Plaintiff to be called to medical to assess his claims of passing out and instruct Plaintiff to come to medical if passing out. SSOF # 57. Glassey ordered that Plaintiff be given a hat and long sleeved shirt on May 21, 2012. SSOF # 29.

On June 2, 2012, Plaintiff was evaluated by medical personnel for his complaint that he was out of Triamcinolone cream for his rash. SSOF # 44. If Plaintiff complained about passing out, he would have been evaluated for passing out. SSOF # 45.

On June 3, 2012, Plaintiff was evaluated by medical personnel. SSOF # 46. Plaintiff was advised about concerns regarding his hypothyroidism and advised of the possibility of stroke if this was not addressed. SSOF # 47. Plaintiff insisted that medical was not doing anything with his rash. SSOF # 48. Plaintiff was referred to the health care provider. SSOF # 49. If Plaintiff complained about passing out, he would have been evaluated for passing out. SSOF # 45.

Glassey evaluated Plaintiff for complaints relating to his rash on June 4, 2012 and Plaintiff indicated that the rash was getting better with the treatment provided. SSOF # 50. Glassey extended the treatment at this time. SSOF # 51. Plaintiff did not return to the medical unit to seek treatment for his rash until August 1, 2014. SSOF # 52. Plaintiff came in for emergency treatment relating to his rash on August 1, 2014, and he refused assessment. SSOF # 53.

Plaintiff admits that after he passed out he was taken to the medical unit and put in a room for observation. SSOF # 54. On June 14, 2012, Plaintiff refused to allow medical to complete an assessment related to Plaintiff's complaint of passing out. SSOF # 55.

### III. Defendants are entitled to summary judgment because Plaintiff cannot establish Defendants violated Plaintiff's Eighth Amendment rights as a matter of law.

#### A. To state a claim under 42 U.S.C. § 1983 for violation of Plaintiff's constitutional rights, Plaintiff must show specific conduct by Defendants in violation of Plaintiff's rights.

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law; and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). To state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of the defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-372 & 377 (1976). To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Liability under § 1983 must be based on the personal involvement of the defendant. *Id.*

There is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court has stated, "[i]n a § 1983 suit … --where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (A supervisor's mere knowledge of a subordinate's wrongdoing does not amount to the supervisor's violation of the Constitution.).

To the extent Plaintiff complains regarding any response by Defendant Norton to an inmate letter grievance by Plaintiff, such allegations cannot support a § 1983 claim. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. *Shehee*, 199 F.3d at 300.

> **B.  Plaintiff cannot establish a 42 U.S.C. § 1983 claim against Defendant Norton regarding the alleged indifference to Plaintiff's serious medical needs because Plaintiff cannot show specific conduct by Defendant Norton in violation of Plaintiff's Constitutional rights.**

Norton cannot be held responsible for the alleged actions of others. Norton simply was not the person assigned to treat Plaintiff on May 12, 2012. SSOF # 37. Defendant Norton did not actively participate in Plaintiff's treatment. SSOF # 37 & 39-43. Plaintiff admits that Norton never refused to treat Plaintiff for his rash. SSOF # 34. Furthermore, to the extent Norton responded to any inmate letter grievances by Plaintiff, Norton's actions in responding to the grievance cannot support a § 1983 claim. As such, Plaintiff's § 1983 claim fails as a matter of law because Plaintiff cannot produce evidence of a

genuine issue of material fact that could establish active unconstitutional behavior by Defendant Norton.

### C. Additionally, to establish deliberate indifference to Plaintiff's medical needs, Plaintiff must show that he had a serious medical need and Defendants acted with deliberate indifference to that need.

To maintain a § 1983 medical indifference claim, Plaintiff must show that Defendants acted with "deliberate indifference to [Plaintiff's] serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Plaintiff must establish that he has or had a serious medical need and that a particular defendant acted with deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To demonstrate a serious medical need, a plaintiff must establish facts to support that the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096 (quotations omitted). To establish that a particular defendant acted with deliberate indifference, a plaintiff must show (a) a purposeful act or failure to respond to a prisoner's serious medical need and (b) harm caused by the indifference. *Jett*, 439 F.3d at 1096. An inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for a prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Differences in judgment regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish his claim for medical indifference, Plaintiff must

show that the course of treatment Defendants chose was medically unacceptable under the circumstances, and that Defendants chose this course in conscious disregard of an excessive risk to Plaintiff's health. *Jackson*, 90 F.3d at 332. Furthermore, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096.

**D. Even if Plaintiff could establish specific conduct by Defendant Norton (which Plaintiff cannot), Plaintiff failed to establish deliberate indifference as a matter of law because Plaintiff failed to establish evidence that Defendant Notion or Glassey acted with deliberate indifference to a serious medical need, or that such alleged indifference caused Plaintiff damage.**

Plaintiff alleges, at most, that Defendants acted negligently when treating Plaintiff for a rash and "passing out". Plaintiff has failed to produce any evidence (1) that Plaintiff did not receive treatment for his rash and/or "passing out"; (2) that additional treatment other than what was received was a serious medical need; (3) that Defendants acted with deliberate indifference to Plaintiff; (4) that there was a wrongful denial of treatment by Defendants; and (5) that any alleged denial of treatment (which there was no denial) caused Plaintiff damage.

Plaintiff's complaints against Defendants are based on Plaintiff's incorrect belief that Plaintiff did not receive treatment, when in reality he is really complaining that his skin condition was not cured immediately by Defendants. SSOF # 33. Plaintiff admits that he was seen by medical staff at the prison during the time he is complaining about the failure of Defendants to treat him—May 10, 2012 to August 6, 2012. SSOF # 15-18 & 36. Plaintiff admits that he began receiving medication for the rash in May 2012. SSOF # 16. Plaintiff has received treatment for his skin condition since he first requested to be seen by medical at CACF relating to his complaints about the rash on May 10, 2012. SSOF # 18. Plaintiff refused treatment from nurses at CACF medical, and requested that he be seen by a physician. SSOF # 19 & 35.

Plaintiff's allegations that Glassey failed to examine him for "passing out" on June 2, 2012 are unsupported by any evidence. SSOF # 29, 31, 44-52, 54-57. On May 21, 2012, Glassey addressed Plaintiff's HNR in the medical chart, where Plaintiff complained

about his rash and passing out. SSOF # 56. Glassey ordered Plaintiff to be called to medical to assess his claims of passing out and instruct Plaintiff to come to medical if passing out. SSOF # 57. Glassey ordered that Plaintiff be given a hat and long sleeved shirt on May 21, 2012. SSOF # 29.

Plaintiff was evaluated by medical personnel, including Glassey, on June 2, 3 and 4, 2012. SSOF # 31 & 44-52. If Plaintiff complained about passing out, he would have been evaluated for passing out. SSOF # 45. Plaintiff admits that after he passed out, he was taken to the medical unit and put in a room for observation. SSOF # 54. On June 14, 2012, Plaintiff refused to allow medical to complete an assessment related to Plaintiff's complaint of passing out. SSOF # 55.

Furthermore, Plaintiff has failed to disclose any experts to testify that any alleged refusal by Defendants to provide treatment caused Plaintiff damage. Plaintiff has failed to produce any evidence to establish that the treatment he received caused Plaintiff damage. In fact, Plaintiff admitted that he has had what he describes as the same rash, off and on, since at least 2008; and a rash that he describes as a different rash from at least 1999 to 2007. SSOF # 13-14. Plaintiff admits that he has received treatment for his skin condition since he first requested to be seen by medical at CACF relating to his complaints about the rash on May 10, 2012. SSOF # 18. Plaintiff refused treatment from nurses at CACF medical, and requested that he be seen by a physician. SSOF # 19 & 35.

Plaintiff refused treatment for hypothyroidism prior to his May 12, 2012 complaints regarding his rash, since at least 2008. SSOF # 58. Plaintiff's refusal to receive treatment for hypothyroidism could have contributed to his skin condition in May, 2012. SSOF # 59. Plaintiff has additionally been receiving treatment for his skin condition from August 6, 2014 to the present from medical and physicians at the facility and an off-site dermatologist. SSOF # 20. Plaintiff continues to experience symptoms associated with the skin condition, off and on, which has been diagnosed as "dermatitis". SSOF # 24. Plaintiff testified that his rash is better, and it comes and goes. SSOF # 25.

Plaintiff's complaint that he failed to receive treatment in May to August, 2012 is simply unfounded and unsupported by any evidence, and cannot support a claim for medical indifference. As such, Defendants are entitled to judgment as a matter of law for Plaintiff's medical indifference claim.

### IV. In the alternative, Defendants are entitled to summary judgment on punitive damages.

Punitive damages are awarded only "in the most egregious of cases, where there is reprehensible conduct combined with an evil mind over and above that required for commission of a tort. . . ." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (1986); *see also Medasys Acquisition Corp. v. SDMS*, P.C., 203 Ariz. 420, 424, 55 P.3d 763, 767 (2002) (punitive damages "should rarely be awarded" and only in the most egregious of cases). A plaintiff must prove something more than the underlying tort; a plaintiff must prove by clear and convincing evidence that a defendant engaged in aggravated and outrageous conduct with an evil mind. *Saucedo v. Salvation Army*, 200 Ariz. 179, 182, 24 P.3d 1274, 1277 (Ct. App. 2001). The primary inquiry for punitive damages is based on the wrongdoer's state of mind or attitude. *Olson v. Walker*, 162 Ariz. 174, 177, 781 P.2d 1015, 1018 (Ct. App. 1989), *citing Linthicum*, 150 Ariz. at 330. Although the element of intent may be inferred in a claim for punitive damages, a plaintiff must always prove outwardly aggravated, outrageous, or malicious conduct. *Saucedo*, 200 Ariz. at 182. Another important qualification on punitive damages is that the mental state must exist at the time of the conduct itself. *Saucedo*, 200 Ariz. at 182 ("The requisite intent and outrageous and egregious conduct must occur in tandem with the conduct giving rise to the injury in order to recover punitive damages.").

In the instant case, Plaintiff cannot point to any facts of the "something more" needed to support of a claim for punitive damages. Plaintiff cannot demonstrate, by clear and convincing evidence, that Defendants engaged in any outwardly aggravated, outrageous, or malicious conduct directed toward Plaintiff. In fact, Plaintiff testified that he does not believe Defendants were motivated by hate towards Plaintiff, nor does he

believe Defendants were trying to hurt Plaintiff, as Defendants would not know Plaintiff from any other inmate. SSOF # 60. As such, Defendants are entitled to summary judgment on Plaintiff's claim for punitive damages.

## V. Conclusion.

Defendants are entitled to judgment as a matter of law because Plaintiff has failed to establish a genuine issue of material fact that could establish actions taken by Defendants in violation of Plaintiff's constitutional rights. Plaintiff alleges, at most, that Defendants acted negligently when treating Defendant for a rash and "passing out", which cannot support a claim for medical indifference against Defendants. For all the foregoing reasons, summary judgment should be granted in Defendants' favor against all of Plaintiff's claims.

RESPECTFULL SUBMITTED this 30th day of September, 2014.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**


By /s/ Allison R. Edwards
    James K. Kloss
    Allison R. Edwards
    Attorneys for Defendants Lauren Glassey
    and Amber Norton

## CERTIFICATE OF SERVICE

I hereby certify that on September 30th, 2014, I electronically transmitted the foregoing document to the Clerk's office using the Court's CM/ECF System and thereby served all counsel of record in this matter and mailed a copy by U.S. mail to the following:

Sittingdown 052179 3D-21
Central Arizona Correctional Facility M70
P.O. Box 9600
Florence, AZ 85132
Plaintiff Pro Se

/s/Paula Schultz
30082-105