James K. Kloss, SBN 010327
james.kloss@lewisbrisbois.com
Allison R. Edwards, SBN 028080
allison.edwards@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051
Firm email: azdocketing@lbbslaw.com
Attorneys for Defendants Lauren Glassey and Amber Norton

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sittingdown,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　Defendants. | No. CV 13-1082-PHX-SRB (BSB)<br><br>**DEFENDANTS' SEPARATE STATEMENT OF FACTS TO SUPORT THEIR MOTION FOR SUMMARY JUDGMENT** |

Defendants Lauren Glassey and Amber Norton (collectively, "Defendants) hereby submit this Separate Statement of Facts in support of their Motion for Summary Judgment.

1.　　Plaintiff asserts a § 1983 medical indifference claim against Defendants Amber Norton ("Norton") and Lauren Glassey ("Glassey") relating to the alleged, and unsubstantiated, failure to treat his rash. *See generally* Plaintiff's Complaint.

2.　　Defendant Norton was employed by Correctional Healthcare Company f/k/a Physicians Network Association as the Health Services Administrator a/k/a Facility Health Administrator (collectively, "HSA") for the Central Arizona Complex in Florence, Arizona ("CACF")—where Plaintiff was incarcerated. *See* Exhibit A: Declaration of Amber Norton, ¶ 2.

3.　　Defendant Glassey was employed by CHC as a nurse practitioner at CACF. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 2.

4. Plaintiff complains about the treatment he received from Defendants in connection with a skin condition for an approximately three month period from May 10, 2012 to August 6, 2012 at the CACF. *See generally* Plaintiff's Complaint.

5. Plaintiff alleges that Norton denied Plaintiff treatment for his rash on May 12, 2012. *See* Plaintiff's Complaint, p. 3.

6. Plaintiff claims Norton made no attempt to confer with the nurse practitioner or the doctor on Plaintiff's behalf, even though she described the rash as "very bad". *See* Plaintiff's Complaint, p. 3.

7. Plaintiff claims Norton "made sure" he was not treated for his rash on May 12, 2012. *See* Plaintiff's Complaint, p. 3.

8. Plaintiff alleges that Norton was deliberately indifferent to his serious medical needs because she ignored Plaintiff's May 21, 2012 inmate letter grievance, reporting that Plaintiff had passed out and that he had run out of medication for a rash. *See* Plaintiff's Complaint, p. 6.

9. Plaintiff claims he suffered for three months while Glassey treated a wrong diagnosis. *See* Plaintiff's Complaint, p. 4.

10. Plaintiff also alleges that Glassey was deliberately indifferent to Plaintiff's serious medical needs for refusing to examine him on June 2, 2012 "for passing out." *See* Plaintiff's Complaint, p. 4.

11. Plaintiff claims Glassey ended his medication on August 1, 2012, without any follow-up for the rash. *See* Plaintiff's Complaint, p. 4.

12. Plaintiff claims Glassey issued him a longsleeve shirt, but not a hat. *See* Plaintiff's Complaint, p. 4.

13. Plaintiff has had what he describes as the same rash, off and on, since at least 2008. *See* Exhibit C: Deposition of Sittingdown, p. 75, lines 2-19.

14. Plaintiff had a rash that he describes as a different rash from at least 1999 to 2007. *See* Exhibit C: Deposition of Sittingdown, p. 75, lines 2-19.

15. Plaintiff admits that he was seen by medical staff at the prison during the time he is complaining about the failure of Defendants to treat him. *See* Exhibit C: Deposition of Sittingdown, p. 14, lines 18-25, p. 15, lines 1-3, and p. 81, lines 3-24.

16. Plaintiff admits that he began receiving medication for the rash in May 2012. *See* Exhibit C: Deposition of Sittingdown, p. 28, lines 19-22, and p. 81, lines 3-24.

17. Plaintiff's real allegation is that the rash was not cured immediately by Defendants. *See* Exhibit C: Deposition of Sittingdown, p. 15, lines 14-22, p. 25, lines 2-25, p. 26, lines 1-10, p. 35, lines 7-12, and p. 62, lines 8-23.

18. Plaintiff has received treatment for his skin condition since he first requested to be seen by medical at CACF relating to his complaints about the rash on May 10, 2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 4; *see* Exhibit B: Declaration of Lauren Glassey, ¶ 4-5; *see* Exhibit C: Deposition of Sittingdown, p. 14, lines 18-25, and p. 15, lines 1-3; *see* Exhibit D: Plaintiff's Medical Records at MED000121-122.

19. Plaintiff refused treatment from nurses at CACF medical, and requested that he be seen by a physician. *See* Exhibit C: Deposition of Sittingdown, p. 41, lines 6-23; *see* Exhibit D: Plaintiff's Medical Records at MED0000350.

20. Plaintiff has additionally been receiving treatment for his skin condition from August 6, 2014 to the present from medical and physicians at the facility and an off-site dermatologist. *See* Exhibit C: Deposition of Sittingdown, p. 59, lines 7-25, p. 60, lines 1-6, and p. 65, lines 4-8.

21. On October, 23, 2013, an off-site dermatologist, Dr. Racette, indicated in his assessment/plan for Plaintiff, "atopic dermatitis". *See* Exhibit A: Declaration of Amber Norton, ¶¶10-12; *see* Exhibit D: Plaintiff's Medical Records at MED000211-213.

22. Dr. Racette indicated that he discussed with patient his skin is very dry and recommended Clobetesol 0.05% topical ointment. *See* Exhibit A: Declaration of Amber Norton, ¶¶10-12; *see* Exhibit D: Plaintiff's Medical Records at MED000211-213.

23. On November 8, 2013, Plaintiff began receiving the Clobetesol 0.05% topical ointment. *See* Exhibit A: Declaration of Amber Norton, ¶10-12.

24. Plaintiff continues to experience symptoms associated with the skin condition, off and on, which has been diagnosed as "dermatitis". *See* Exhibit C: Deposition of Sittingdown, p. 65, lines 4-21.

25. Plaintiff testified that his rash is better, and it comes and goes. *See* Exhibit C: Deposition of Sittingdown, p. 17, lines 17-23, p. 18, lines 16-24, and p. 97, lines 15-17.

26. Plaintiff claims that a physician at CACF has diagnosed him with dermatitis; that Glassey failed to diagnose him with dermatitis from May 12, 2012 to August 6, 2012; and that the failure to diagnose him with dermatitis at an early stage has caused his rash to worsen. *See* Exhibit C: Deposition of Sittingdown, p. 70, lines 3-25, and p. 71, lines 1-6.

27. As early as May 16, 2012, Glassey diagnosed Plaintiff with "dermatitis", and treated him accordingly. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 6.

28. Plaintiff was evaluated for his rash by medical personnel at CACF, including Glassey, in May, 2012, including an evaluation on at least May 12, 2012, May 16, 2012, and May 31, 2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 7; *see* Exhibit B: Declaration of Lauren Glassey, ¶ 7; *see* Exhibit D: Plaintiff's Medical Records at MED000115-118 & 120-124.

29. Glassey ordered that Plaintiff be given a hat and long sleeved shirt on May 21, 2012. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 8; *see* Exhibit D: Plaintiff's Medical Records at MED000120.

30. Although Glassey may order a long sleeved shirt in her role at CACF, she is not responsible to physically issue these materials to the inmates at CACF, including Plaintiff. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 8.

31. Plaintiff was evaluated for his rash by medical personnel at CACF, including Glassey, in June, 2012, including an evaluation on at least June 2, 2012 and June 4, 2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 8; *See* Exhibit B: Declaration of Lauren Glassey, ¶ 10; *see* Exhibit D: Plaintiff's Medical Records at MED000113 & 119.

32. Plaintiff was evaluated for his rash by medical personnel at CACF in August, 2012, including an evaluation on at least August, 1, 2012, August 6, 2012 and August 15,

2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 9; *see* Exhibit D: Plaintiff's Medical Records at MED000109-111.

33. Plaintiff's complaints against Defendants are based on Plaintiff's incorrect belief that Plaintiff did not receive treatment, when in reality he is really complaining that his skin condition was not cured immediately by Defendants:

| | |
|---|---|
| Question to Sittingdown: | So what exactly is your complaint regarding Ms. Norton? If she was the one that provided you treatment on May 12, 2012, what is your complaint regarding that treatment as it relates to Ms. Norton? |
| Response by Sittingdown: | There was no treatment. I didn't get any treatment. |
| Question to Sittingdown: | Well, you told me that you were seen for the condition and evaluated. |
| Response by Sittingdown: | Right, but no treatment. How could I have the treatment when I have the same rash today. |
| Question to Sittingdown: | When you say no treatment, do you mean that it wasn't cured? |
| Response by Sittingdown: | Exactly right. |
| Question to Sittingdown: | I'm trying to understand what you mean by that. |
| Response by Sittingdown: | It wasn't cured. That's correct. |
| Question to Sittingdown: | So when you're making complaints and saying that you weren't provided any treatment, is it your testimony that what you're really saying is that they didn't cure the rash? |
| Response by Sittingdown: | They never have. |
| Question to Sittingdown: | So just so I understand then, so you're not alleging that on May 12, 2012 that Ms. Norton failed to provide you with an evaluation? |
| Response by Sittingdown: | She failed to give me an evaluation and she failed to treat me. |
| Question to Sittingdown: | But I thought when you say she failed to give you an evaluation, I thought you told me she looked at the rash. |
| Response by Sittingdown: | So did two or three other people in there. |
| Question to Sittingdown: | But in your opinion that's not an evaluation. I need to understand exactly what you're claiming. So when you go in to the medical treatment room and Ms. Norton takes a look at your rash and you have a discussion |

| | |
|---|---|
| | about what's going on, in your opinion, you're not receiving treatment? |
| Response by Sittingdown: | That's my opinion. |

\*\*\*\*

| | |
|---|---|
| Question to Sittingdown: | When you say Ms. Norton didn't treat you, is there any other allegation other than the fact that you're saying your rash wasn't cured that goes into that? Like, when you say Ms. Noron didn't treat you, you just mean that your rash wasn't cured; is that correct? |
| Response by Sittingdown: | That's correct. |

\*\*\*\*

| | |
|---|---|
| Question to Sittingdown: | So your testimony is going to be that the nurses, when they were treating your rash from May to early August of 2012, they were prescribing you cream and pills. It just maybe wasn't working? |
| Response by Sittingdown: | Yes…. |
| Question to Sittingdown: | But I just wanted to be clear that they were prescribing something. It just wasn't working? |
| Response by Sittingdown: | Well, yeah. They didn't throw me outside and let me starve to death, but they gave me something that didn't work…. |

*See* Exhibit C: Deposition of Sittingdown, p. 25, lines 2-25, p. 26, lines 1-10, p. 35, lines 7-12, and p. 62, lines 8-23.

34. Plaintiff admits that Ms. Norton never refused to treat him:

| | |
|---|---|
| Question to Sittingdown: | Did Ms. Norton ever tell you I'm not going to treat you for this rash? |
| Response by Sittingdown: | She never said that. |

*See* Exhibit C: Deposition of Sittingdown, p. 31, lines 19-21.

35. Plaintiff admits that he refused to be seen by a nurse when he came in to medical to be seen for the rash on August 1, 2012:

| | |
|---|---|
| Question to Sittingdown: | So on August 1, 2012, you came in to be seen for your rash as an emergency and is it correct that you refused to be seen by a nurse and insisted that you be seen by a doctor? |
| Response by Sittingdown: | Yeah…. |

Question to Sittingdown: So just so I understand, what are you claiming about Ms. Glassey failing to – said she stopped your medication without any followup, but on the same day you're refusing to seen by a nurse.

Response by Sittingdown: Yeah.

*See* Exhibit C: Deposition of Sittingdown, p. 56, lines 21-25, and p. 57, lines 1-6.

36. Plaintiff was seen in the nurse's line on May 12, 2012; and he was referred to the health care provider at CACF for further evaluation. *See* Exhibit A: Declaration of Amber Norton, ¶ 5; *see* Exhibit D: Plaintiff's Medical Records at MED000121-122.

37. Plaintiff's medical records do not identify Ms. Norton as the nurse who was assigned to provide treatment to Plaintiff on May 12, 2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 6; *see* Exhibit D: Plaintiff's Medical Records at MED000121-122.

38. Plaintiff submitted a HNR on May 20, 2012, stating that he was out of Triamcinolone cream and had passed out on the yard for a couple of seconds, which medical at CACF responded to on May 21, 2012. *See* Exhibit A: Declaration of Amber Norton, ¶ 13 & 15; *see* Exhibit D: Plaintiff's Medical Records at MED000490.

39. When an inmate makes a HNR, the request may be evaluated by any medical personnel working at the time. *See* Exhibit A: Declaration of Amber Norton, ¶ 16.

40. Norton is not responsible to answer all inmate HNR's. *See* Exhibit A: Declaration of Amber Norton, ¶ 17.

41. Norton may respond to an inmate's HNR if she is working at the time. *See* Exhibit A: Declaration of Amber Norton, ¶ 18.

42. Medical personnel working at the time responded appropriately to Plaintiff's HNR. *See* Exhibit A: Declaration of Amber Norton, ¶ 15-18.

43. Norton did not respond to Plaintiff's HNR. *See* Exhibit A: Declaration of Amber Norton, ¶ 19.

44. On June 2, 2012, Plaintiff was evaluated by medical personnel for his complaint that he was out of Triamcinolone cream for his rash. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 13; see Exhibit D: Plaintiff's Medical Records at MED000119.

45. If Plaintiff complained about passing out, he would have been evaluated for passing out. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 13 & 14.

46. On June 3, 2012, Plaintiff was evaluated by medical personnel. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 14.

47. Plaintiff was advised about concerns regarding his hypothyroidism and advised of the possibility of stroke if this was not addressed. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 14.

48. Plaintiff insisted that medical was not doing anything with his rash. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 14.

49. Plaintiff was referred to the health care provider. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 14.

50. Glassey evaluated Plaintiff for complaints relating to his rash on June 4, 2012 and Plaintiff indicated that the rash was getting better with the treatment provided. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 15.

51. Glassey extended the treatment at this time. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 15.

52. Plaintiff did not return to the medical unit to seek treatment for his rash until August 1, 2014. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 15.

53. Plaintiff came in for emergency treatment relating to his rash on August 1, 2014, and he refused assessment. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 15.

54. Plaintiff admits that after he passed out he was taken to the medical unit and put in a room for observation. *See* Exhibit C: Deposition of Sittingdown, p. 37, lines 2-13 & 20-25, and p. 38, lines 1-2.

55. On June 14, 2012, Plaintiff refused to allow medical to complete an assessment related to Plaintiff's complaint of passing out. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 16; *see* Exhibit D: Plaintiff's Medical Records at MED000112.

56. On May 21, 2012, Glassey addressed Plaintiff's HNR in the medical chart, where Plaintiff complained about his rash and passing out. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 9.

57. Glassey ordered Plaintiff to be called to medical to assess his claims of passing out and instruct Plaintiff to come to medical if passing out. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 9.

58. Plaintiff refused treatment for hypothyroidism prior to his May 12, 2012 complaints regarding his rash, since at least 2008. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 12.

59. Plaintiff's refusal to receive treatment for hypothyroidism could have contributed to his skin condition in May, 2012. *See* Exhibit B: Declaration of Lauren Glassey, ¶ 11 & 12.

60. Plaintiff testified that he does not believe Defendants were motivated by hate towards Plaintiff, nor does Plaintiff believe Defendants were trying to hurt Plaintiff, as Defendants would not know Plaintiff from any other inmate. *See* Exhibit C: Deposition of Sittingdown, p.107, lines 17-23, and p. 108, lines 18-23.

RESPECTFULLY SUBMITTED this 30th day of September, 2014.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By /s/ Allison R. Edwards
James K. Kloss
Allison R. Edwards
Attorneys for Defendants Lauren Glassey and Amber Norton

### CERTIFICATE OF SERVICE

I hereby certify that on September 30th, 2014, I electronically transmitted the foregoing document to the Clerk's office using the Court's CM/ECF System and thereby served all counsel of record in this matter and mailed a copy by U.S. mail to the following:

| | |
|---|---|
| 1 | Sittingdown 052179 3D-21 |
| 2 | Central Arizona Correctional Facility M70<br>P.O. Box 9600 |
| 3 | Florence, AZ 85132 |
| | Plaintiff Pro Se |
| 4 | |
| 5 | /s/Paula Schultz<br>30082-105 |