MD

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sittingdown, | No. CV 13-1082-PHX-SRB (BSB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Sittingdown, who is currently confined in the Arizona State Prison-Central Arizona Correctional Facility ("CACF"), brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 12.) Defendants move for summary judgment (Doc. 83) and Plaintiff opposes.[1] (Docs. 90-92, 96.)

The Court will grant Defendants' Motion.

**I.  Background**

Plaintiff filed a ten-count First Amended Complaint against eleven Defendants regarding the medical care he received for a rash and an episode of passing out while at CACF. (Doc. 12.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated claims in Counts I and IV and required Defendant Amber Norton to answer those claims. (Doc. 19.) The Court also determined that Plaintiff stated a claim

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 85.)

in Count II and required Defendant Lauren Glassey to answer Count II. (*Id.*) The Court dismissed the remaining claims and Defendants. (*Id.*)

**II. Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only

the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.  Defendants' Requests to Strike**

In support of their Motion for Summary Judgment, Defendants filed a Separate Statement of Facts ("SSOF"), which included Declarations by Defendants Glassey and Norton. (Doc. 84, Exhs. A, B.) In response, Plaintiff submitted two documents that respond to the assertions in each Defendant's Declaration. (Docs. 90, 91.) Plaintiff also submitted his own Declaration and exhibits. (Doc. 92.)

In their Reply, Defendants ask the Court to strike Plaintiff's Declaration because it is "conclusory, contains argument and hearsay and fails to cite to admissible evidence." (Doc. 94 at 2-3.) Defendants argue that Plaintiff's Declaration violates Federal Rule of Civil Procedure 56(c)(4) to "set out the facts" and violates Local Rule 56.1(b)(2) by "failing to provide the 'specific admissible portion of the record' that supports each factual contention." (*Id*. at 3.)

Because Plaintiff is incarcerated and proceeding pro se, the Court is required to construe his filings liberally and afford him the benefit of any doubt. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (courts must "construe liberally motions papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly"); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Plaintiff's Declaration establishes disputes with Defendants' SSOF and he attached documentary evidence in support of his Declaration. (Doc. 92.) Further, the Court finds that Plaintiff's Declaration includes factual assertions regarding treatment he received and that he has personal knowledge to testify to such facts. *See* Fed. R. Civ. P. 56(c)(4). Defendants fail to properly set forth any specific objections to paragraphs within Plaintiff's Declaration for the Court to consider. *See Reinlasoder v. City of Colstrip*, CV-12-107-BLG, 2013 WL 6048913, at *7 (D. Mont. Nov. 14, 2013) (unpublished) ("objections [ ] must be stated with enough particularity to permit the Court to rule"); *see also Halebian v. Berv*, 869 F. Supp. 2d 420, 443 n.24 (S.D.N.Y. 2012) ("unsupported

objection in entirely conclusory fashion to the entire record is insufficient and thus denied"). Therefore, Plaintiff's Declaration and exhibits will be considered, and Defendants request to strike it is denied.

Plaintiff has also submitted a "Second Response to Defendant's Request for Summary Judgment with Brief in Support and Reply Memorandum", in which he responds to Defendants' SSOF. (Doc. 96.) Defendants, in a Second Reply, ask the Court to strike Plaintiff's Second Response because it was filed on February 13, 2015 when the Court had set a deadline of February 12, 2015 for Plaintiff's Response. (Doc. 97 at 1-2.)

Plaintiff certified that his Second Response was mailed on February 11, 2015. (Doc. 96 at 16.) Under the "prison mailbox rule," a pleading is deemed filed when handed by the prisoner to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988); *Douglas v. Noelle*, 567 F.3d 1103 (9th Cir. 2009); *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). Therefore, Plaintiff's Second Response was timely filed on February 11, 2015, and Defendants' request to strike the Second Response is denied. The Court will consider Plaintiff's Second Response in deciding Defendants' Motion for Summary Judgment.

## IV.   Facts[2]

During the relevant time period, Defendant Norton served as the Health Services Administrator for CACF and Defendant Glassey was employed as a nurse practitioner there. (Doc. 84 ¶¶ 2, 3.)

Plaintiff has had the same rash, off and on, since at least 2008. (Doc. 84 ¶ 13.) On May 10, 2012,[3] Plaintiff submitted a Health Needs Request ("HNR") stating that he had a rash in his groin area and that the lotions from the store did not work. (Doc. 92 at 2.) A note on the HNR dated May 11 states that Plaintiff was referred to the nurses' line and a

---

[2] Neither party sets out all of the relevant facts in their statements of fact or responses and so the Court derives many of the relevant facts from the documents in the record. *See* Fed. R. Civ. P. 56(c)(3).

[3] All dates are in 2012 unless otherwise noted.

"Plan of Action" dated May 12 indicates that Plaintiff was seen in the nurses' line and referred to the "HCP," i.e., the healthcare provider. (*Id.*) Plaintiff's medical records reflect that on May 12, he was seen for ear wax and a rash in the groin area that had been present for a couple of weeks. (*Id.* at 3, 5.) The notes from that visit indicate that drops were prescribed for the ear wax and that Plaintiff was instructed to return to medical if either condition worsened or did not improve. (*Id.* at 4-6.)

On May 14, Plaintiff submitted an HNR stating: "This is a follow up from 5-10-12 when you checked my bad rash in my groin area and s[inc]e then this rash has spread to my chest, neck and arms. So what should I do?" (Doc. 92 at 8.) A note on the HNR dated May 15 indicates that Plaintiff was referred to the healthcare provider. (*Id.*) On May 16, Defendant Glassey diagnosed Plaintiff with dermatitis and Plaintiff was prescribed medication for his rash.[4] (Doc. 84 ¶¶ 16, 27.)

On May 20, Plaintiff submitted another HNR stating that he was following up on his May 16 visit and that he was out of Triamcinolone Acetonide cream and needs more, that the sun contributes to his rash problem, and that he passed out on the yard for a couple of seconds. (Doc. 92 at 13.) Plaintiff said he needed a long-sleeved shirt to protect his upper body and a big hat to protect his face. (*Id.*) On May 21, Glassey ordered that Plaintiff be given a long-sleeved shirt and hat.[5] (Doc. 84 ¶ 29.) Glassey states in her Declaration that on May 21 she addressed Plaintiff's HNR "in his medical

---

[4] In response to Glassey's statement that she diagnosed Plaintiff with dermatitis and "treated him accordingly," Plaintiff states that "Glassey wasn't sure, yet treated for dermatitis with the same ointment for three months knowing it wasn't working towards curing the rash." (Doc. 90 at 2.) According to Plaintiff, Glassey "has an obligation to find a cure, not continually prescribe the same ointment. . . . [W]hen medication proves to be ineffective you prescribe something else[.]" (*Id.*)

[5] Plaintiff does not dispute that Glassey ordered a shirt and hat for him, but contends that she did not follow up to make sure he received the shirt and hat. (Doc. 96 at 4.)

1  chart and ordered Plaintiff to be called to medical to assess his claims of passing out and
2  [to] instruct Plaintiff to come to medical if passing out."[6] (Doc. 84-1 at 5 ¶ 9.)

On May 21, Plaintiff submitted an Inmate Letter to "Medical" stating that he had submitted an HNR the day before about the sun making his rash worse, that he needed a hat and long-sleeved shirt to protect him from the sun, that he passed out at the basketball courts and hurt his arm, and he needed Triamcinolone Acetonide cream. (Doc. 92 at 14.) A response to Plaintiff's Inmate Letter from Defendant Norton dated May 22 states that Plaintiff's "primary area of concern is receiving a long sleeve shirt, hat and Triamcinolone Cream. You will need to submit an HNR for the above requests." (*Id*. at 15.)

On May 24, Plaintiff's blood was drawn, but he did not know why. (Doc. 92 at 53-54.) Plaintiff asked the nurse who drew the blood "what about [his] rash and passing out" and the nurse said "that's not the issue today, just your blood work." (*Id*.)

On May 30, Plaintiff submitted another HNR regarding his Inmate Letter. (Doc. 92 at 18.) Plaintiff wrote: "you didn't answer my HNR[;] what's going on? I wear a large shirt[;] the hat stand[a]rd. <u>What about me Passing Out.</u> And I'm out of Triamcinolone Cream." (*Id*. (emphasis in original).) A note on the HNR dated May 31 states "refer to nurse line." (*Id*.) Another note dated June 2 states "refer to HCP[;] issued 1 tube of Triamcinolone." (*Id*.)

Plaintiff submitted another HNR on May 31, stating that "this is a follow up for the rash I've got all over my body. I'm in a great deal of pain and I need to be seen A.S.A.P. because nothing is working to stop my pain." (Doc. 92 at 19.) A note on the HNR dated May 31 states "seen as ER" and under Plan of Action says "refer to HCP." (*Id*.)

---

[6] It appears that Glassey did not actually see Plaintiff on May 21 because Plaintiff responds that "Glassey clearly writes in the chart a plan of action, then fails to call me in. . . . Glassey's intent was to not examine me that day per ADC policies 1101 and 117, then quickly bury my HNR until June 2, 2012 when she claimed, 'that's the doctors job not mine." (Doc. 90 at 3.)

A May 31 medical report labeled "Dermatitis" describes Plaintiff's rash as located on his entire body, with itching, burning and redness but no weeping or swelling, and no indication of pain or other associated symptoms such as acute distress or labored breathing. (Doc. 92 at 20-21.) The report also notes that Plaintiff stated he "passed out last Friday momentarily started feeling light headed and went back to work." (*Id*. at 21.) The report indicates that Plaintiff was to follow up with the healthcare provider. (*Id*.)

Another medical document labeled "Miscellaneous" and dated June 2, states that Plaintiff is out of Triamcinolone cream and he needs a shirt to protect his skin.[7] (Doc. 92 at 24.) The record notes "red rash scattered all over body" with no open area/drainage and no sign of infection or respiratory distress. (*Id*.) The record states Plaintiff was issued a tube of Triamcinolone cream and a follow up was scheduled with the healthcare provider.[8] (*Id*.)

Plaintiff was evaluated by "medical personnel" on June 3 and "advised about concerns regarding his hypothyroidism and advised of the possibility of stroke if this was not addressed."[9] (Doc. 84-1 at 6 ¶ 14.) Plaintiff "insisted that medical was not doing anything with his rash" and he was referred to the healthcare provider. (*Id*.) Glassey

---

[7] Defendants' SSOF says Plaintiff was evaluated by "medical personnel" on that date and that if Plaintiff had complained about passing out then, "he would have been evaluated for passing out." (Doc. 84 ¶¶ 44, 45.) Plaintiff disputes that he would have been evaluated for passing out because he had already told medical about passing out in his HNR and Glassey "refused to address this issue claiming it was the doctor's job not [hers]." (Doc. 90 at 4-5.)

[8] Plaintiff asserts that the Triamcinolone was issued by Defendant Glassey "and it was then when she told me it was the doctor[']s job to examine patients that pass-out." (Doc. 92 at 55.)

[9] According to Defendants, Plaintiff refused treatment for hypothyroidism prior to his May 12 complaints about his rash and Plaintiff's refusal to receive treatment for hypothyroidism could have contributed to his skin condition. (Doc. 84 ¶¶ 58, 59.) Plaintiff responds that he started taking medication for hypothyroidism after Dr. Haleem "explained it to him," but he contends that the rash remained after he started taking medication, "which rules out the thyroid issue causing the rash." (Doc. 90 at 4.)

evaluated Plaintiff on June 4 for complaints related to his rash. (*Id*. ¶ 15.) Plaintiff "indicated that the rash was getting better with the treatment provided," and Glassey "extended the treatment at this time." (*Id*.) Plaintiff disputes Glassey's assertion that on June 4 he indicated that his rash was getting better with the treatment, noting that he had submitted five HNRs between May 10 and May 31 requesting help with his rash and for passing out, and he filed two grievance between May 23 and September 10. (Doc. 90 at 5-6.)

On June 14, Plaintiff "refused to allow medical to complete an assessment related to his complaint of passing out."[10] (Doc. 84 ¶ 55.) A medical record dated June 14 states "I/M [inmate] not cooperating unable to complete assessment[.] Tanya called in and spoke with I/M." (Doc. 84-1 at 48.)

On August 1, Plaintiff submitted an HNR stating that his rash "is no better today than the first day I was seen." (Doc. 92 at 49.) Plaintiff stated that the prescribed medicine had been canceled, that he wanted to see a doctor for his rash, that he had "a hard time breathing" the night before, and that "someone better get their act together." (*Id*.) Plaintiff's medical records indicate that he was seen on August 1 "as ER for rash issues" but that Plaintiff "refused ER nursing assessment stating 'I'm tired of all of this' & 'I don't want to see a nurse, I want to see the dr.'" (Doc. 92 at 37.) The medical record states that Plaintiff was "educated on consequences of refusal and what we could do for him from a nursing standpoint at this time prior to refusal." (*Id*.) Plaintiff continued to "refuse ER assessment protocol" and signed "refusal documents." (*Id*.) Plaintiff was scheduled for "MD line" on August 3. (*Id*.) Plaintiff wrote in an August 2 HNR that he went to medical on August 1 and was questioned by the nurse about his

---

[10] Plaintiff asserts that "this statement is true and correct" but that Glassey failed to mention that on May 31 LPN James Duprey told Plaintiff that the nurse practitioner or the doctor would have to evaluate the issue of passing out. (Doc. 90 at 6.) Plaintiff also asserts that SSOF ¶ 55 is "misleading" because he asked to see the doctor "for what Mrs. Glassey claimed to be the only individual qualified to examine me for passing out" but he "was refused access to the doctor by the nurse that day." (Doc. 96 at 7-8.)

- 8 -

rash; he told the nurse to read his HNR, that he needs to see a doctor, and that the rash "has gone on for to[o] long." (Doc. 92 at 50.)

Plaintiff saw Dr. Haleem at CACF on August 6 and again on August 15. (Doc. 92 at 57-58.) The medical chart for August 6 appears to say that the Triamcinolone is not helping, to discontinue the Triamcinolone, and to use Clotrimazole. (Doc. 92 at 38.) The August 6 record notes that Plaintiff had shingles on the right chest wall with dry lesions and no blisters. (*Id*.) Plaintiff did not receive the Clotrimazole cream until August 16. (*See id*. at 40, 58.)

On August 14, ADC Director Ryan's office responded to Plaintiff's appeal of the denial of grievance M70-028-012 regarding Plaintiff rash and "history of passing out." (Doc. 92 at 43.) The appeal was denied with the following explanation:

> 1. Review of your records confirms you submitted several Health Needs Requests to have the rash on your groin examined by a medical provider and not by a nurse. Although there was some delay in getting you scheduled, you were finally seen by a medical provider on 8/6/12. After a thorough physical examination, the lesions on your chest wall were deemed to be shingles in the process of resolving. The rashes on your groin, pubic area and buttocks were diagnosed as jock itch (Tinea cruris). You were provided appropriate medications for your condition including Clotrimazole cream and long-sleeved shirt and administered an injection of Kenalog.
>
> 2. As you were advised by the Health Services Administrator in her 6/20/12 response to your grievance, medical staff has determined that your passing out-fainting was due to the summer heat and sun. Fainting (syncope) due to heat exposure occurs more commonly in the elderly; therefore, during the summer months, you are advised to avoid unnecessary heat exposure and to drink plenty of fluids to prevent further fainting episodes.

(*Id*.)

Plaintiff's medical records indicate that he continued to receive treatment at CACF for his rash after August. A September 13 note in Plaintiff's medical chart states that the

rash was not going away with the cream and Plaintiff was prescribed Diflucan 150 mg for two weeks. (*See* Doc. 92 at 47; *see also* Doc. 92 at 61-62.) At a follow-up appointment on October 4, 2012, Dr. Haleem wrote "most of rash completely gone," "only one patch is at lt chest wall," and "tinea [illegible] [] responded to Diflucan." (Doc. 92 at 48; *see also* Doc. 92 at 61.)

On October 23, 2013, Plaintiff saw an outside dermatologist, Dr. Racette, for his rash. (Doc. 84 ¶ 21.) Dr. Racette diagnosed atopic dermatitis and prescribed Clobetesol 0.05% topical ointment, and Plaintiff began receiving the Clobetesol on November 8, 2013. (Doc. 84 ¶¶ 22-23.) In his notes, Dr. Racette wrote that Plaintiff "reports itching and rash but reports no tenderness, no burning, no hair loss, no nail problems, no growth, no skin cancer, and no acne. He reports no fever, no chills, no nausea, no fatigue, normal appetite, and no weight change. . . . He reports no depression, no anxiety, no stress, and no difficulty sleeping. (Doc. 84-1 at 61.) Dr. Racette wrote that Plaintiff reported that he had a head to toe rash for 17 months, that the rash was not painful, but was itchy, dry and red, and that nothing gives relief. (*Id*.) Dr. Racette discussed with Plaintiff that his skin was very dry and, in addition to the Clobetesol, he recommended prednisone 20 mg for 9 days, and an over-the-counter cream.[11] (*Id*. at 62.)

Plaintiff continues to experience symptoms associated with his dermatitis, off and on, and has been receiving treatment for his skin condition up to the present time at the prison and with an off-site dermatologist. (Doc. 84 ¶¶ 20, 24.)

**V.     Analysis**

    **A.     Legal Standard**

To succeed on a medical-care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective

---

[11] Neither party states whether Plaintiff received the prednisone recommended by Dr. Racette.

- 10 -

standard. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. The state of mind required for deliberate indifference is subjective recklessness; however, "the standard is 'less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060. Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact, and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal citations and quotation marks omitted). Deliberate indifference may also be shown by the way in which prison officials provide medical care, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), or "by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003). And deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. But the

1  deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate
2  medical care or negligence in diagnosing or treating a medical condition does not support
3  an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)
4  (citations omitted). Further, a mere difference in medical opinion does not establish
5  deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

6  Finally, even if deliberate indifference is shown, to support an Eighth Amendment
7  claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at
8  1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing
9  medical treatment does not constitute Eighth Amendment violation unless delay was
10 harmful).

11 **B.     Discussion**

12        **i.    Rash**

13 Defendants argue that "Plaintiff's real allegation is that he was not treated in the
14 way he would have preferred and his skin condition (which he testified he has had off and
15 on since at least 2008) was not immediately cured." (Doc. 83 at 1.) In addition,
16 Defendants argue that "Plaintiff alleges, at most, that Defendants have acted negligently
17 when providing treatment to Plaintiff." (*Id*.) Defendants cite to the fact that Plaintiff was
18 evaluated for his rash by medical personnel at CACF, including by Defendant Glassey,
19 on May 12, May 16 and May 31, twice in June, and three times in August 2012. (Doc. 83
20 at 4 (citing SSOF ¶¶ 28, 31, 32).) Defendants contend that while Glassey did order a
21 shirt and hat for Plaintiff, she was not responsible for ensuring that Plaintiff received
22 those items or to physically issue those items to inmates at CACF. (Doc. 83 at 4 (citing
23 SSOF ¶¶ 29, 30.) Defendants also argue that Plaintiff cannot establish a § 1983 claim
24 against Defendant Norton because she was not the person assigned to treat Plaintiff on
25 May 12 and she did not actively participate in Plaintiff's treatment. (Doc. 83 at 9.)

26 Plaintiff responds that his medical records "show no treatment what so ever for
27 [his] rash from May 12, 2012 when Mrs. Norton became aware of [his] rash and walked
28 away till May 16, 2012 when Mrs. Glassey finally examined [him] and prescribed

medication." (Doc. 91 at 3.) Plaintiff argues that Dr. Haleem's note from his August 6 visit that the Triamcinolone cream was "not helping" shows that his rash had gotten worse after three months of using Triamcinolone, yet Glassey "refused to change the plan for treatment despite [Plaintiff's] repeated statements that the medication wasn't working." (Doc. 92 at 57.) Plaintiff further contends that although Dr. Haleem prescribed a cream for his rash on August 6, he did not receive it until nine days later, which is additional evidence of Defendants' deliberate indifference. (*Id.* at 58.) Also, by ordering a shirt and hat for Plaintiff without following up on the order for three months, Plaintiff claims that Glassey was deliberately indifferent to his serious medical needs. (*Id.* at 59.)

Plaintiff's facts fail to create a genuine issue of material fact. Plaintiff's facts establish, at most, negligence in the treatment of his rash. Plaintiff's facts do not establish that he was denied treatment for his rash, or that any delay in treatment resulted in further significant injury or the unnecessary and wanton infliction of pain. Plaintiff was evaluated within two days of submitting his first HNR and he was prescribed medication for his rash four days later. That the medication was ineffective and other treatments were later tried does not establish that either Glassey or Norton were deliberately indifferent to Plaintiff's serious medical needs. Nor does Plaintiff's disagreement about the course of treatment for his rash give rise to an Eighth Amendment violation. *See Toguchi,* 391 F.3d at 1058 (inmate's disagreement with physician regarding his treatment does not amount to deliberate indifference). Finally, Plaintiff does not establish that he was harmed by the three-month delay in receiving a long-sleeved shirt or, if there was harm, that Glassey or Norton was responsible for that harm. *See Hallett,* 296 F.3d at 745–46 (delay in providing care does not constitute deliberate indifference unless inmate suffers significant harm as a result).

Accordingly, taking Plaintiff's facts as true, Plaintiff has failed to demonstrate a genuine issue of material fact regarding the care for his rash.

. . . .

### ii. Passing Out

On May 20, Plaintiff submitted an HNR stating that he needed more Triamcinolone cream as well as a long-sleeved shirt and hat and that he "pas[sed] out on the yard for a couple of seconds and my rash gets worse." (Doc. 92 at 13.) Plaintiff alleges that Defendants failed to treat him for this episode of passing out. Plaintiff asserts that Defendant Glassey was aware of his May 20 HNR because she wrote in his medical chart on May 21, "is patient really passing out? If so needs to come to medical immediately." (Doc. 90 at 3 (citing Doc. 92 at 12).) Plaintiff argues that Glassey failed to call him in and her "intent was to not examine [him] that day per ADC policies 1101 and 117, then quickly bury [his] HNR until June 2, 2012 when she claimed 'that's the doctors job not mine.'" (Doc. 90 at 3.)

Defendants argue that in his deposition "Plaintiff admits that after he passed out he was taken to the medical unit and put in a room for observation." (Doc. 83 at 8 (citing SSOF ¶ 54).) Plaintiff responds that "this statement is a lie" and that he was put in an observation room "when [he] had a stroke and came back from the hospital," which was about eight months after he had passed out. (Doc. 96 at 7.) Neither party presents any medical records documenting when or for what reason Plaintiff was ever in an observation room. Nor do the excerpts of Plaintiff's deposition in the record make clear when or for what reason Plaintiff was under observation.

Defendants also argue that on June 14, Plaintiff refused to allow medical to complete an assessment related to his complaint of passing out. (Doc. 83 at 8 (citing SSOF ¶ 55).) Plaintiff responds that this statement is misleading because he asked to see the doctor "for what Mrs. Glassey claimed to be the only individual qualified to examine me for passing out. I was refused access to the doctor by the nurse that day, June 14, 2012." (Doc. 96 at 7-8.)

An isolated incident of lack of treatment generally does not support an Eighth Amendment deliberate indifference claim; there must a showing of repeated failure to treat the inmate properly. *See McGuckin*, 974 F.2d at 1060-61 (repeated failure to

properly treat an inmate or a single failure that is egregious strongly suggests deliberate indifference). In this case, the facts do not support that this one episode of passing out was caused by or resulted in a serious medical need. Moreover, Plaintiff does not dispute that he refused to allow medical to complete an assessment on June 14 related to his complaint of passing out. Nor do the facts suggest that Plaintiff was harmed by any lack of or delay in treatment for this one episode. *See Jett*, 439 F.3d at 1096; *see also Hunt*, 865 F.2d at 200.

Based on this record, the facts do not support that Plaintiff's one episode of passing out was either a serious medical need or that Defendants were deliberately indifferent to that need.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 83).

(2) Defendants' Motion for Summary Judgment (Doc. 83) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 9th day of April, 2015.

_____
Susan R. Bolton
United States District Judge